IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHEIKH DIALLO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19-00392-CV-W-ODS ) |
| CATALENT PHARMA SOLUTIONS, LLC, | ) ) ) ) |
| Defendant. | ) ) |

ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

Pending is Defendant's Motion for Summary Judgment. Doc. #47. For the following reasons, Defendant's motion is granted.

### I. BACKGROUND[1]

In 2014, Plaintiff Cheikh Diallo, who is originally from Senegal and identifies as black, was hired by Defendant Catalent Pharma Solutions, LLC as a distribution associate II. Doc. #53, at 4-5.[2] Defendant processes clinical study drugs, primarily focusing on oncology drugs. *Id.* at 4. Distribution associates are responsible for picking, packing, and processing shipment orders for clinical trials. *Id.* at 5. During the relevant time period, there were twenty-two distribution associate II employees. *Id.* at 17.

As part of Plaintiff's Muslim faith, he prays five times per day. *Id.* at 9. When Plaintiff started on second shift, he took a five-minute break to pray at work around 5:00 p.m. *Id.* at 10. Defendant alleges that when Plaintiff's supervisor, Cody Morley, discovered Plaintiff praying on the warehouse floor, Morley informed Plaintiff that he

---

[1] Unless otherwise noted, the facts in this section are uncontroverted by the parties.
[2] For ease of reference, the Court cites the ECF document number and corresponding ECF page number for each citation.

should not be praying in that location due to safety concerns and asked Plaintiff to pray on his break times. *Id.* Plaintiff alleges he prayed in a room near the distribution area. *Id.* During Ramadan in 2014 and 2015, Defendant worked out a schedule accommodation to enable Plaintiff to participate in Ramadan. *Id.* at 12. Defendant also accommodated Plaintiff's request to be flexible on Fridays to attend Friday services. *Id.* at 14.

Plaintiff alleges Morley (1) mentioned to him at least five times that "people walk around buck naked" and "live in huts in Senegal"; (2) asked him why he worked in America; (3) commented five to ten times about the value of an American dollar in Senegal; (4) asked him why God would let people starve during fasts; (5) following at least three terrorist attacks in the news, said he hoped Plaintiff would not blow up Defendant if he got fired; and (6) told him not to go outside for Halloween 2017 or he might scare children. *Id.* Morley denies making any of the foregoing comments. *Id.*

On a Saturday between May 2016 and June 2017, distribution associate Ronnell Bradley and Plaintiff clocked in around noon, left the premises, and then came back and clocked out around 4:00 or 5:00 p.m. *Id.* Morley was asked by human resources if he approved Bradley and Plaintiff working overtime. Morley denied approving overtime and reported the incident to his manager. *Id.* Defendant conducted a time clock audit to identify when employees entered and exited the facilities. *Id.* On June 14, 2016, Plaintiff was issued a final written warning for theft of time, which warned "further violations of this nature will result in termination." *Id.* at 20.

In May 2018, Defendant received an anonymous complaint that some associates were taking extra breaks without clocking out. *Id.* Following this complaint, Defendant pulled badge report data and cross referenced it with Defendant's timekeeping system to determine if associates were taking extra breaks without clocking out. *Id.* at 21. On May 30, 2018, Human Resources Manager Jeff Wheeler and Distribution Manager David Cooper met with Plaintiff. *Id.* at 22. During the meeting, Plaintiff was told Defendant had no record of an approved accommodation for him to leave work for Friday services and was reminded that he was not authorized to leave work without clocking out to attend Friday services. *Id.* Plaintiff tried to explain a supervisor authorized him to leave early on Fridays, and he did not understand how Wheeler and

Cooper could not know he had been leaving early. *Id.* At the conclusion of the meeting, Wheeler requested Plaintiff's access badge and said he would contact Plaintiff. *Id.*

On June 6, 2018, Plaintiff emailed Human Resources Generalist Tiffany Shilling, stating, among other things, "I'm writing this letter to make a formal report of discrimination." Doc. #53, at 22. Shilling did not read Plaintiff's email until August 2018.[3] Plaintiff believes he also sent the email to Wheeler. *Id.* at 23. But Wheeler does not recall receiving Plaintiff's email, did not find Plaintiff's email when he searched his email, and did not see the email until after Plaintiff's termination. *Id.* On June 6, 2018, Plaintiff's employment was terminated. Doc. #53, at 23.

Plaintiff sued Defendant in the Circuit Court of Clay County, Missouri. Doc. #1-1. In May 2019, Defendant removed the action to this Court. Doc. #1. In his Amended Complaint, Plaintiff alleges race, religion, and national origin discrimination; hostile work environment; retaliation; and failure to accommodate in violation of the Missouri Human Rights Act ("MHRA"). Doc. #24. Defendant moves for summary judgment in its favor on all claims.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that

---

[3] Plaintiff referenced the email in the charge of discrimination he filed with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"). Only after seeing this reference in the charge of discrimination did Shilling discover Plaintiff's email in her email junk folder. *Id.* at 23.

party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

### III. DISCUSSION

When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) (citations omitted). Missouri discrimination safeguards are not identical to the federal safeguards. *Id.* at 818-19 (citation omitted); *see also Wierman*, 638 F.3d at 1002 (citations omitted) (finding the district court erred in applying federal employment standards to the plaintiff's MHRA claims). "If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding." *Id.* (quoting *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 112 (Mo. Ct. App. 2006)). In considering a summary judgment motion in the context of an MHRA claim, the Court "must determine whether the record shows two plausible, but contradictory, accounts of the essential facts, and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Daugherty*, 231 S.W.3d at 820 (citation omitted); *see also Carter v. CSL Plasma Inc.*, 63 F. Supp. 3d 1034, 1043 (W.D. Mo. 2014).

### A. Plaintiff's Discriminatory Discharge Claims
#### (1) Prima Facie Case

Plaintiff alleges his religion, race, and national origin were motivating factors in Defendant's decision to terminate Plaintiff's employment. To establish a discrimination claim, the parties agree Plaintiff must show he was a member of a protected class, he was qualified to perform the job, he suffered an adverse employment action, and he was treated differently than other similarly situated employees of a different race, religion, or national origin. Doc. #48, at 12; Doc. #53, at 33; *Crossland v. Hy-Vee, Inc.*, Case No. 2:18-04215-NKL, 2019 WL 5847844, at *3 (W.D. Mo. Nov. 7, 2019).

Defendant concedes Plaintiff satisfies the first three elements, but argues it is entitled to summary judgment because Plaintiff cannot establish he was treated differently than similarly situated employees of a different race, religion, or national origin. Doc. #48, at 12.

The test for determining whether an employee can be compared requires that the other employees be "similarly situated in all relevant aspects" before the plaintiff can introduce evidence comparing himself to the other employees. *Kerr v. Curators of the Univ. of Mo.*, 512 S.W.3d 798, 807 (Mo. Ct. App. 2017). A comparator typically must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 119 (Mo. banc 2015).

Defendant argues it is entitled to summary judgment because Plaintiff cannot show he was treated differently than similarly situated employees of a different race, religion, or national origin for timekeeping violations after previously receiving a final written warning for timekeeping violations. Doc. #48, at 13. After receiving an anonymous complaint, Defendant audited the timekeeping practices of the entire Distribution Department for the previous month and took remedial action against all employees. Doc. #48, at 12. Defendant terminated Plaintiff and Ronnell Bradley because they had already received a final written warning for time theft; issued final written warnings to four distribution associates, three African Americans and one Caucasian, for first-time time theft violations; and verbally warned all other distribution associates. *Id.* at 13. Defendant alleges the only other distribution associate who was Muslim and of African origin, Abou Diaw, was verbally warned. *Id.*

Plaintiff argues Defendant should not have limited its investigation of timekeeping practices to the previous month. Doc. #53, at 34. He contends that had Defendant looked at data back to 2017, it would find a significant number of distribution associates were off property for the same amount of time, if not longer, than Plaintiff. *Id.* While Defendant's investigation of timekeeping violations was limited to one month, there is no evidence that discriminatory animus informed Defendant's decision to limit its investigation to a one-month period. Therefore, the frequency of timekeeping violations outside the period considered by Defendant is irrelevant.

Plaintiff also contends that, during the same timeframe, a white, non-Muslim employee took more breaks and left Defendant's property more frequently while clocked in but that employee received only a written warning. Doc. #53, at 35. However, unlike Plaintiff, that employee had no prior timekeeping discipline. Defendant is within its discretion to take into consideration prior discipline for the same behavior. *See Crossland*, 2019 WL 5847844 at *7; *Buck v. Am. Family Mut. Ins. Co.*, No. 4:12CV1879 SNLJ, 2014 WL 272343, at *12 (E.D. Mo. Jan. 24, 2014).

In addition, Plaintiff also maintains his final written warning had expired almost a year before he was discharged. Doc. #53, at 35. Under Defendant's discipline policy, attendance violation discipline expires after one year. Doc. #53, at 28. Defendant considered prior and/or expired discipline consistently across all distribution associates. There is no evidence that Defendant's consideration of an employee's prior discipline was the result of discriminatory animus.

The Court finds Plaintiff fails to establish a prima facie case of discriminatory discharge, and there is no evidence that Plaintiff's race, religion, or national origin was a motivating factor in Defendant's decision to terminate Plaintiff's employment. Therefore, Defendant's motion for summary judgment on Plaintiff's discriminatory discharge claims is granted.

*(2) Defendant's Legitimate, Nondiscriminatory Reason*

Even if the Court were to find Plaintiff established a prima facie case of discriminatory discharge, Defendant would still be entitled to summary judgment. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Murray v. Sw. Mo. Drug Task Force*, 335 S.W.3d 566, 569 n.7 (Mo. Ct. App. 2011). Defendant terminated Plaintiff's employment because of timekeeping violations. Doc. #48, at 13. In response to Defendant's summary judgment motion, Plaintiff does not discuss Defendant's legitimate, nondiscriminatory reason. Moreover, an employee's theft of time is a legitimate, nondiscriminatory reason for the employee's discharge. *See Fields v. United Parcel Serv., Inc.*, No. 4:11CV581 CDP, 2012 WL 3871980, at *4 (E.D. Mo. Sept. 6, 2012). Thus, Defendant met its burden.

*(3) Pretext*

Because Defendant articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, the burden shifts back to Plaintiff to "show that the proffered justification is merely a pretext for discrimination." *Murray*, 335 S.W.3d at 569.

Plaintiff argues a hostile work environment created by Morley provides a genuine issue of material fact as to whether his termination was pretextual. *Id.* Setting aside whether Plaintiff suffered a hostile work environment, there is no evidence that Morley was involved in the decision to terminate Plaintiff's employment. In addition, Plaintiff does not point to anything in the record demonstrating the decisionmakers harbored discriminatory animus. Thus, even if Plaintiff could establish a prima facie case of discrimination, the Court would still grant summary judgment in Defendant's favor because there is no evidence of pretext.

### B. Retaliation Claim

Plaintiff alleges Defendant retaliated against him for complaining about alleged race discrimination by (1) denying his requested religious accommodations, and (2) terminating his employment. Doc. #24-1, at 26.[4] To establish a prima facie case for retaliation under the MHRA, a plaintiff must establish (1) he complained of discrimination or another practice prohibited by the MHRA, (2) the defendant took an adverse action against him, and (3) his complaint was the motivating factor in an adverse action. *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794 (Mo. Ct. App. 2018).

*(1) Denied Religious Accommodations*

Plaintiff alleges he was denied religious accommodations in retaliation for reporting race discrimination to Defendant. Doc. #24, at 26. Defendant argues it accommodated Plaintiff's religious accommodation requests, and therefore, there was no adverse employment action. Doc. #48, at 9. Plaintiff concedes Defendant

---

[4] In response to Defendant's motion for summary judgment, Plaintiff conceded his allegation of retaliation based on Defendant transferring Morley was insufficient to support a retaliation claim. Doc. #53, at 29.

accommodated some of his religious accommodation requests for at least a year, including his request to leave early on Fridays to attend mosque services. Doc. #53, at 30.

On May 30, 2018, Plaintiff was told he was not authorized to leave work early on Fridays to attend mosque without clocking out. Doc. #59-1, at 7. Immediately after being told such conduct was not authorized, Plaintiff's access badge was taken, and he was told Defendant would be in touch. Doc. #59-2, at 23. Plaintiff argues it could be reasonably inferred that his termination, which occurred a week later, stemmed from Plaintiff's opposition to the alleged rescission of his accommodation. Doc. #53, at 31.

"More than a temporal connection between an employee's protected conduct and the adverse employment action is required to create a genuine material factual issue." *Watson v. Heartland Health Laboratories, Inc.*, 790 F.3d 856, 865 (8th Cir. 2015) (citing *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005)). Plaintiff concedes he was "already fully engaged in a reasonable accommodation at the time of his termination he thought he was entitled to based on his regular practice [of leaving work early on Fridays] for at least a year." Doc. #53, at 30. Thus, he was not denied a religious reasonable accommodation, and his retaliation based on his allegation that he was denied a religious reasonable accommodation fails.

Also, more than a year before he was discharged, Plaintiff was disciplined for theft of time, and he was told he must notify his supervisor when he left to attend mosque. Doc. #59-2, at 19. Then, in June 2018, Defendant conducted an investigation into time theft, and as a result, terminated Plaintiff's and Bradley's employment for timecard discrepancies. Plaintiff fails to establish his report of race discrimination, which occurred after his religious accommodation request was allegedly denied, was a motivating factor in Defendant's purported decision to deny some religious accommodations. Because Plaintiff fails to establish a prima facie case of retaliation based on denied religious accommodations, the Court grants summary judgment in Defendant's favor on this claim.

8
Case 4:19-cv-00392-ODS   Document 61   Filed 06/11/20   Page 8 of 13

### (2) Termination of Employment

Plaintiff alleges Defendant terminated his employment for complaining about alleged race discrimination. Doc. #24, at 26. On the day he was discharged, Plaintiff emailed a human resource professional, stating "I'm writing this letter to make a formal report of discrimination." Doc. #53, at 22. Plaintiff also believes he sent the email to Wheeler. Doc. #53, at 23. Defendant argues there is no evidence of a causal connection between Plaintiff's email and his termination. The email's recipient did not read Plaintiff's email until months after he was discharged. Doc. #53, at 23. And Wheeler has no recollection of receiving the email. *Id.*

"An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation." *See Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 715 (8th Cir. 2000). Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliatory discharge claim.[5]

### C. Religious Accommodation Claim

Missouri employers have "an obligation to make reasonable accommodations to the religious needs of employees…where these accommodations can be made without undue hardships on the conduct of the employer's business." 8 C.S.R. § 60-30.050. The parties agree the accommodation of religious beliefs requires employers to find and utilize alternatives which (1) do not compromise the employment entitlements of others, and (2) do not require the employer to incur more than *de minimis* costs. Doc. #48, at 11; Doc. #53, at 32; *see Sedalia No. 200 Sch. Dist. v. Mo. Comm'n on Human Rights*, 843 S.W.2d 928, 930 (Mo. Ct. App. 1992). Plaintiff alleges (1) he requested breaks to pray and a modified schedule on Fridays to attend mosque, (2) Defendant refused to engage in the interactive process to determine a reasonable accommodation, and (3) Defendant denied his requested accommodations. Doc. #24, at 18.

---

[5] Even if Plaintiff could establish a prima facie case of retaliation, Defendant would still be entitled to summary judgment because it articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See supra*, section III(A)(2). Moreover, Plaintiff has not pointed to any evidence showing Defendant's decision was pretextual.

Defendant maintains there were safety concerns about Plaintiff kneeling in prayer by moving industrial equipment and fork trucks in the warehouse environment. Doc. #48, at 11. As a result, human resources identified a safe location for him to pray outside the warehouse setting. *Id.* Defendant also offered Plaintiff a scheduling accommodation during Ramadan and allowed Plaintiff to leave work early on Fridays to attend religious services. *Id.*

Plaintiff asserts no one assisted him in finding a room to pray during the day. Doc. #53, at 33. Rather, Plaintiff allegedly found a room on his own and began to pray. *Id.* He only stopped praying when Morley insisted he clock out to do so. *Id.* Plaintiff further argues he was told on May 30, 2018, that he was not authorized to leave early on Fridays to attend mosque without clocking out. *Id.*

However, as discussed above, Plaintiff concedes, at the time he was discharged, he had the reasonable accommodation to which he believed he was entitled. Doc. #53, at 30. Further, Plaintiff understood that if he needed to leave work, he had to notify his supervisor or manager before leaving work. There is no evidence that Plaintiff's religious beliefs prevented him from following that policy, or it would be reasonable to excuse him from following that policy because of his religious beliefs. Nonetheless, Plaintiff has failed to show he was denied reasonable accommodation while working for Defendant. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's religious accommodation claim.

### D. Disparate Pay Claims

Plaintiff alleges he was paid less than similarly situated co-workers, and his race, religion, and national origin were motivating factors in Defendant's decision to pay him less. Doc. #24, at 8, 14, 22. To state a disparate pay claim under the MHRA, Plaintiff must prove his race, religion, and/or national origin was a motivating factor in his lower salary. Mo. Rev. Stat. § 213.101.4 (2017).

Plaintiff was paid more than eighteen of the twenty-two distribution associate II employees during the relevant time period. Doc. #48, at 15. Of the eighteen employees who were paid less than Plaintiff, two were Caucasian. *Id.* Of the three employees who were paid more than Defendant, one was African-American. *Id.* There were no other

known distribution associate II employees of African origin or Muslim. *Id.* Abdou Diaw, who is Muslim and originates from Africa, was paid more than Plaintiff, but Diaw was a distribution associate III. *Id.* Plaintiff was a distribution associate II. *Id.*

Defendant provided Plaintiff with pay information for all distribution associates employed shortly before and during Plaintiff's employment. Doc. #53, at 36. The information was categorized as "Total Base Pay Annualized – Amount." *Id.* Plaintiff argues this descriptor is ambiguous and open to interpretation. *Id.* Defendant clarified that "Total Base Pay Annualized – Amount" referred to a distribution associate's pay for the entire year, assuming the associate worked fulltime for a year at the associate's hourly rate without overtime. Doc. #59-3, at 1. Plaintiff failed to dispute the information provided by Defendant or Defendant's explanation.

The Court finds Plaintiff fails to show his race, religion, and/or national origin was a contributing factor in his pay. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's disparate pay claims.

### E. Hostile Work Environment Claims

Plaintiff alleges he was subjected to disparaging conduct and less favorable treatment because of his race, religion, and national origin. Doc. #24, at 6, 12, 20. To prevail on this claim, Plaintiff must prove: (1) he is a member of a group protected by the MHRA, (2) he was subjected to unwelcome harassment, (3) his membership in the protected group was a motivating factor in the harassment, and (4) a term, condition, or privilege of his employment was affected by the harassment. Mo. Rev. Stat. § 213.101.4 (2017); *Bram v. AT&T Mobility Servs.*, 564 S.W.3d 787, 797 (Mo. Ct. App. 2018). Defendant does not dispute that Plaintiff was a member of several protected groups but argues Plaintiff cannot establish the remaining elements of his claim.

Harassment "creates a[n] [actionable] hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." *See Baldridge*, 552 S.W.3d at 710 (citing *Fuchs v. Dep't of Revenue*, 447 S.W.3d 727, 733 (Mo. Ct. App. 2014)). The conduct must be sufficiently hostile as it was subjectively viewed by Plaintiff and as it would be objectively viewed by

a reasonable person. *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 245 (Mo. Ct. App. 2006). The objective hostility of a work environment is measured by the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Watson*, 790 F.3d at 862.

Plaintiff alleges Morley (1) said at least five times that people walk around "buck naked" and "live in huts in Senegal", (2) asked Plaintiff why he worked in America, (3) commented five to ten times about the American dollar's value in Senegal, (4) asked him why God would let people starve during fasts, (5) after at least terrorist attacks occurred, said he hoped that Plaintiff would not blow up Catalent if he got fired, and (6) told him not to go outside for Halloween 2017 or he might scare children. Doc. #53, at 6. Morley denies making any of these comments. *Id.*

Defendant contends Morley's comments are not frequent or severe enough to create an abusive work environment. Doc. #48, at 17. It also maintains Morley's comments are inconsistent with Morley facilitating Plaintiff's Ramadan accommodation, and argues Morley's facilitation rebuts any claim that Morley's fasting comment was religiously hostile. *Id.* Finally, Defendant argues none of Morley's comments are physically threatening or interfered with Plaintiff's job performance. *Id.*

As a test for whether Plaintiff's allegations are sufficiently hostile, Defendant cites *Jackson v. Flint Ink North American Corporation*, where an African-American factory worker was spit on, subjected to widespread graffiti and racially derogatory names, and discovered his name written in a workplace shower with an arrow connecting his name with a burning cross and a KKK sign. 382 F.3d 869, 870 (8th Cir. 2004). Despite viewing the shower conduct as a threat of death, the Eight Circuit characterized *Jackson* as a borderline case. *Id.* Plaintiff argues although *Jackson* was characterized as a borderline case, one should still be able to infer that "lesser" conduct is also sufficient. Doc. #53, at 37.

While Morley's comments were unwelcome, Plaintiff fails to establish the comments affected the terms, conditions, or privileges of his employment. Further,

Morley's comments were not physically threating and did not interfere with Plaintiff's job performance.

After considering the totality of the circumstances, viewing the evidence presented by the parties in the light most favorable to Plaintiff, and giving Plaintiff the benefit of all reasonable inferences, the Court finds Plaintiff fails to establish prima facie claim of hostile work environment. Therefore, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is granted.

### IV.   CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATE:  June 11, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT